# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0495-20

J.C.G.,[1]

    Plaintiff-Respondent,

v.

C.A.,

    Defendant-Appellant.

_____

        Submitted January 12, 2022 – Decided February 11, 2022

        Before Judges Whipple and Geiger.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FV-15-1651-20.

        Horn Law Group, LLC, attorneys for appellant (Jeff J. Horn, of counsel; Jessica R. Carosiello, on the brief).

        Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to identify the parties to protect the identity of the victim. See R. 1:38-3(c)(12).

Defendant C.A. appeals from a final restraining order (FRO) entered against him on September 2, 2020, pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm substantially for the reasons set forth in the thoughtful, reasoned oral opinion of Judge Madelin F. Einbinder.

Defendant and plaintiff, J.C.G., were involved in a dating relationship that lasted several years, ultimately resulting in one child, whom we will call "Pam" to protect her privacy. R. 1:38-3(d)(9). On May 11, 2020, plaintiff obtained a temporary restraining order (TRO) against defendant. At the FRO hearing, Judge Einbinder allowed each party to testify extensively about the discord in their relationship. The parties also were given the opportunity to cross-examine each other regarding the incident that prompted plaintiff to seek the protection of a restraining order.

Plaintiff testified that she and defendant never resided together. Plaintiff's mother, Pam, and plaintiff's twenty-three-year-old son live with plaintiff at her home. Plaintiff and defendant had a tumultuous relationship throughout its existence. Plaintiff testified that she suffered some sort of abuse throughout her entire relationship with defendant. Plaintiff testified defendant's mental stability decreased as their relationship has gone on.

A-0495-20

In November 2019, plaintiff and defendant appeared in the Family Part to decide parenting time of Pam. The order resolving the issue of parenting time between plaintiff and defendant granted plaintiff discretion in deciding when, and if, defendant would receive parenting time with Pam. Plaintiff was to exercise her discretion based on how defendant was behaving and how he appeared, among other factors. Defendant was ordered to complete psychiatric evaluations and treatment, but never provided proof of completing such requirements.

Plaintiff testified that during the early months of the COVID-19 pandemic, defendant's behavior became increasingly concerning. Defendant appeared at plaintiff's home almost every day attempting to visit Pam, and on some days, more than once. Plaintiff was uncomfortable having defendant at her house with such frequency for safety reasons. Plaintiff believed defendant was living out of his car at the time. Because defendant frequently had to go out to obtain food and interact with others face-to-face, plaintiff was not comfortable having defendant at her home.

After defendant started to appear at plaintiff's home every day, plaintiff found some of defendant's personal belongings under her house in a crawl

3

space. Plaintiff did not give defendant consent to leave his articles in her crawl space and was uncomfortable with defendant's behavior.

Between the beginning of the pandemic and plaintiff's filing of her initial TRO with the Family Part, defendant filed numerous motions with the court to see Pam. In plaintiff's application for a TRO, plaintiff asserted that defendant became physical with her several times. He threw her to the ground on one occasion and shoved her while she was pregnant on another occasion. Defendant, on numerous occasions, poured bottles of water on plaintiff's head during arguments in an apparent attempt to humiliate her.

During April and May 2020, police officers responded to plaintiff's home three to five times at plaintiff's request. On one of these occasions, defendant went to plaintiff's home unannounced and refused to leave. Plaintiff testified that defendant seemed "manic" and "angry" on these occasions, resulting in her feeling uncomfortable. As this behavior persisted, plaintiff blocked defendant's phone number and social media accounts. She also asserted defendant had been calling her "pretty constant[ly]" during this time and would call at all hours of the day. Defendant frequently called plaintiff and her mother coarse, offensive names. After plaintiff blocked his phone

A-0495-20

number, defendant would use an unknown number to reach plaintiff and continue to leave her voicemails.

On one occasion, defendant showed up and opened the door to plaintiff's home. Defendant brought plaintiff's dog to the front door of her home in an apparent attempt to lure Pam to the door, and then picked Pam up. Defendant and plaintiff engaged in a near-violent scuffle and plaintiff attempted to close the door. On another occasion, defendant went to plaintiff's home unannounced and began to mow plaintiff's lawn. When plaintiff requested defendant stop mowing her lawn and leave, defendant refused and she called the police.

Plaintiff testified that, since the court entered a TRO in her favor against defendant, she has felt "more at peace." Importantly, plaintiff is no longer available to supervise visitations between defendant and Pam.

Defendant, self-represented, testified at length about his love for both plaintiff and his daughter, but did not deny the allegations that he had gone to plaintiff's home. Instead, he explained his motivation and the history of custody and parenting litigation between them.

The trial court agreed with plaintiff that the above-described events constituted the predicate act of harassment, see N.J.S.A. 2C:25-17 to -35, and

A-0495-20

that an FRO was necessary to protect plaintiff from defendant. Accordingly, the trial court issued an FRO in plaintiff's favor on September 2, 2020. This appeal followed.

Our review of a trial judge's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, [we] should accord deference to family court fact[-]finding." Id. at 413. Such deference is particularly proper "when the evidence is largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). However, we review questions of law determined by the trial court de novo. Smith v. Millville Rescue Squad, 225 N.J. 373, 387 (2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

When considering a domestic violence complaint, a court must first determine whether the plaintiff has demonstrated, by a preponderance of credible evidence, that the defendant has committed a predicate act under

6

N.J.S.A. 2C:25-19(a).  Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006) (citations omitted).  One such predicate act is harassment under N.J.S.A. 2C:33-4.  N.J.S.A. 2C:25-19(a)(13).  N.J.S.A. 2C:33-4 encompasses three different forms of the petty disorderly persons offense of harassment, and each form requires proof of the purpose to harass.

Under the PDVA, a person commits the predicate act of harassment:

> if, with purpose to harass another, he:
>
> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

The intent to harass "may be inferred from the evidence presented" and "common sense and experience may inform that determination."  See State v. Hoffman, 149 N.J. 564, 577 (1997) (citations omitted); see also J.D. v. M.D.F., 207 N.J. 458, 477 (2011) (citing Hoffman, 149 N.J. at 577).  "[W]hether a

particular series of events rises to the level of harassment or not is fact-sensitive." J.D., 207 at 484.

Defendant contends that the court erred in finding that defendant purposely harassed plaintiff. Notably, defendant's brief frequently describes him as an individual who merely wanted to spend time with his child. For the reasons set forth below, this argument lacks merit.

The record amply supports the trial court's findings. The trial court was present for plaintiff's testimony and therefore was able to assess her credibility. The trial court accepted that defendant repeatedly called plaintiff multiple times per day, sometimes during unconventional hours. Importantly, defendant frequently called plaintiff and her mother, referring to them in coarse language. This behavior fits almost perfectly into the definition for "harassment" outlined in N.J.S.A. 2C:33-4(a). In addition, defendant's voicemails using shockingly coarse language at all times of the day falls squarely within the definition of "harassment" under N.J.S.A. 2C:33-4(a).

Moreover, the record amply supports the trial court's finding that defendant "[e]ngaged in [a] course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4(c). As plaintiff testified, defendant began to show up at her

8

home almost daily. Defendant left belongings in plaintiff's crawlspace below her house without consent. Defendant used trickery to coax their daughter out of plaintiff's home by using plaintiff's dog. Plaintiff had to call the police several times to effectuate defendant's departure from her property.

Given our deferential standard of review, we perceive no basis to second-guess Judge Einbinder's factual and credibility findings. The judge's conclusion that plaintiff established the need for an FRO as a matter of law is unassailable. To the extent we have not addressed defendant's remaining arguments, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0495-20